UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBORAH F. WHITE,<br>     Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>     Defendant. | Case # 1:18-cv-225-DB<br><br>MEMORANDUM DECISION<br>AND ORDER |

## INTRODUCTION

Plaintiff Deborah A. White ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act and her application for supplemental security income ("SSI") under Title XVI of the Social Security Act (the Act). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and is before the undersigned, in accordance with a standing order.

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 13, 18. Plaintiff also filed a reply. *See* ECF No. 19. For the reasons set forth below, Plaintiff's motion (ECF No.13) is **DENIED**, and the Commissioner's motion (ECF No. 18) is **GRANTED**.

## BACKGROUND

On April 2, 2014, Plaintiff protectively filed her DIB and SSI applications, alleging a disability beginning on May 22, 2009 (the disability onset date), due to: "(1) Anxiety/Severe Depression; (2) HIV; (3) Knees; (4) Back Disc; and (5) Seizures." Transcript ("Tr.") 213. Plaintiff's claim was denied initially on August 4, 2014 (Tr. 109-120), after which she requested an administrative hearing. Plaintiff's hearing was held before Administrative Law Judge Melissa

Lin Jones (the "ALJ") on August 23, 2016, in Buffalo, New York. Tr. 11-20. Plaintiff's non-attorney representative, Jeanne Murray, also appeared at the hearing. Tr. 20. Joseph Atkinson, a vocational expert ("VE"), also appeared and testified at the hearing. *Id.*

The ALJ issued an unfavorable decision on December 22, 2016, finding that Plaintiff was not disabled under section 1614(a)(3)(A) of the Act. Tr. 11-20. On December 14, 2017, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## **LEGAL STANDARD**

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her December 22, 2016 decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2012;

2. The claimant has not engaged in substantial gainful activity since May 22, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*);

3. The claimant has the following severe impairments: anxiety disorder; depression; panic disorder and substance abuse disorder (20 CFR 404.1520(c) and 416.920(c));

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[1] except she is limited to simple, routine, repetitive tasks (not at a production rate pace), using judgment and dealing with changes in the work setting limited to simple work-related decisions; and only occasional interaction with supervisors, coworkers or the public;

6. The claimant is capable of performing past relevant work as a housekeeping cleaner, DOT #323.687-014. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965);

7. The claimant has not been under a disability, as defined in the Social Security Act, from May 22, 2009, through the date of this decision (20 CFR 404.1520(1) and 416.920(1)).

Tr. at 11-20.

Accordingly, the ALJ determined that, for the application for DIB, protectively filed on April 2, 2014, Plaintiff is not disabled under sections 2l6(i) and 223(d) of the Act. *Id.* at 20. The

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

ALJ also determined that, for the application for SSI protectively filed on April 2, 2014, Plaintiff is not disabled under section 1614(a)(3)(A) of the Act.

## ANALYSIS

Plaintiff asserts two points of error. First, Plaintiff argues that the Appeals Council erred by discounting the "second" opinion issued by her treating physician, Fatai Gbadamosi, M.D. ("Dr. Gbadamosi"). *See* ECF No. 13-1 at 14. Next, Plaintiff argues the ALJ failed to assess limitations placed on Plaintiff following an MRI for back pain at Erie County Medical Center. *Id*. at 17.

The Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Plaintiff has applied for benefits multiple times since 2006. Tr. 72, 209. She stopped working at the end of 2007 (Tr. 213) but had some self-employment income in 2014 (Tr. 13). In her current application, Plaintiff alleged she could not work beginning May 22, 2009, because of limitations from anxiety/severe depression, HIV, a knee condition, a back condition at discs 3 and 4, and seizures. Tr. 174-91, 213. At the hearing, Plaintiff complained of a litany of mental and physical ailments, including anxiety, panic attacks, difficulty dealing with others, poor sleep due to pain, history of substance abuse and overdose, frequent falling, difficulty navigating stairs, and difficulty standing/walking for prolonged periods. *See* Tr. 43-47, 50-54, 59-60. The record also

reflects that Plaintiff is HIV positive, although, as noted by the ALJ, this has required only conservative treatment. Tr. 16.

I. **The Appeals Council Properly Considered Plaintiff's Additional Evidence.**

Plaintiff objects to the Appeals Council's rejection of additional evidence submitted after the ALJ's decision. *See* ECF No. 13-1 at 14. As an initial matter, the Court finds the new evidence submitted to the Appeals Council after the ALJ's decision is part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. *Perez v. Chater*, 77 F.3d at 45. The regulations expressly authorize claimants to submit new and material evidence[2] to the Appeals Council without a "good cause" requirement, as long as it relates to the period on or before the ALJ's decision. *Id*. (citing § 404.970(b) and § 416.1470(b)).

In addition, the new evidence should be treated as part of the administrative record. *Id*. The Appeals Council is required to "evaluate the entire record including the new and material evidence submitted . . . [and] review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." § 404.970(b); *see also* § 416.1470(b). *Id*. "Therefore, when the Appeals Council denies review after considering new evidence, the Secretary's final decision "necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Id*. (citing *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Accordingly, the administrative record before this Court consists of all evidence submitted before this decision, including any new evidence that was not before the ALJ.

---

[2] Evidence is "new" when it has not been considered previously in the administrative process. *See Ovitt v. Colvin*, 2014 WL 1806995, *3 (N.D.N.Y. May 7, 2014). New evidence is "material" where it is both relevant to the plaintiff's condition during the relevant time period, and probative. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id*.

In this case, the ALJ left the record open after the hearing for Plaintiff's attorney to submit additional evidence; the record reflects that additional medical evidence was thereafter submitted. *See* Tr. 20, 40, 631-929. It appears that Plaintiff sought another opinion from Dr. Gbadamosi only after the ALJ issued her decision in December 2016, finding Plaintiff not disabled. Tr. 11-20. Plaintiff submitted to the Appeals Council an unsigned February 20, 2017 medical source statement from Dr. Gbadamosi, Plaintiff's treating physician at Evergreen Health Services, Inc. Tr. 930-35. The form was dated February 20, 2017, faxed from Plaintiff's attorney's office to Dr. Gbadamosi on February 16, 2017 (Tr. 931-35), and then not submitted to the Appeals Council until June 4, 2017 (Tr. 930). The Court notes that Dr. Gbadamosi had been Plaintiff's treating physician since 2008 and had seen her 30 times over an 8-year period between March 2008 and April 2016, primarily for HIV treatment. *See* ECF No. 13-1 at 15. Furthermore, Plaintiff saw Dr. Gbadamosi regularly from May 2014 (the date of his previous opinion) through April 2016 (the last appointment appearing in the record). The opinion stated Plaintiff had major depressive disorder, anxiety, and lumbar problems. *Id*. It also stated that Plaintiff was "inappropriate for any workplace setting due to mental illness and polysubstance abuse," and that she was incapable of even low stress jobs. Tr. 932. It stated that she had displayed these limitations since 2008. Tr. 933. The opinion further stated that the author was unable to evaluate Plaintiff's ability to walk, sit, stand, or perform postural maneuvers. Tr. 932-33.

Plaintiff argues that the Appeals Council failed to properly consider this evidence and remand is required for further evaluation of the opinion. *Id.* at 13-17. The Commissioner argues that even though the Plaintiff (or her attorney) failed to exercise due diligence in obtaining the opinion, or in providing the opinion to the agency, the Appeals Council excused Plaintiff from having to show good cause and then clearly considered the newly submitted evidence. *See* ECF

No. 18-1 at 14 (citing Tr. 2, 930-35). The Court agrees. The record reflects that the Appeals Council considered Plaintiff's additional evidence and explained why it was rejected or discounted. Tr. 2. First. the Appeals Council noted that it would grant review of the ALJ's decision if the submitted evidence was new, material, and related to the period on or before the date of the hearing decision. Then, having reviewed said evidence, the Appeals Council determined that Plaintiff failed to meet her burden to show there is a reasonable probability the additional evidence would change the outcome of the decision." Tr. 2.

Plaintiff contends that the Appeals Council was obligated to articulate an explanation for not giving controlling weight to the assessment of a treating physician, and that the lack of such an explanation requires remand. *See* ECF No. 13-1 at 14. In response, the Commissioner argues remand is not required because the agency's regulations do not require the Appeals Council to provide an elaborate explanation when it evaluates additional evidence presented. *See* ECF 18-1 at 15 (citing 20 C.F.R. §§ 404.967, 416.1467, 416.1470). According to the Commissioner the regulations only require that the Appeals Council notify the party of its action and does not mandate any information that must be included in the denial notice. *Id*. Furthermore, as the Commissioner points out, this Circuit has specifically acknowledged that the Appeals Council's denial of review does not amount to consideration on the merits but rather, is analogous to denial of *certiorari*. *See Pollard v. Halter*, 377 F.3d, 183, 192 (2d Cir. 2004) (citations omitted). Thus, the Appeals Council was not required to specify why it found that Dr. Gbadamosi's second statement did not show a reasonable probability for changing the outcome of the decision. As explained above, however, the Commissioner's final decision "necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Hollinsworth v. Colvin*, 2016 WL 5844298 at*3 (W.D.N.Y. 2016) (quoting *Perez*, 77 F.3d at 45).

Accordingly, this Court must "simply review the entire administrative record, which includes the new evidence, and determine, as in every case, whether there is substantial evidence to support the decision of the Secretary." *Id*. (quoting *Perez*, 77 F.3d at 46).

As noted above, Dr. Gbadamosi was Plaintiff's treating physician. The opinions of Plaintiff's treating physicians should be given "controlling weight" if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] case record," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, a treating physician's opinion is not afforded controlling weight when the opinion is inconsistent with other substantial evidence in the record, such as the opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). If the ALJ gives the treating physician's opinion less than controlling weight, he must provide good reasons for doing so. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998).

If not afforded controlling weight, a treating physician's opinion is given weight according to a non-exhaustive list of enumerated factors, including (i) the frequency of examinations and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the physician's opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the physician has a relevant specialty. 20 C.F.R. §§ 404.1527(c) (2), 416.927(c)(2); *see Clark*, 143 F.3d at 118; *Marquez v. Colvin*, No. 12 CIV. 6819 PKC, 2013 WL 5568718, at *9 (S.D.N.Y. Oct. 9, 2013). In rejecting a treating physician's opinion, an ALJ need not expressly enumerate each factor considered if the ALJ's reasoning and adherence to the treating physician rule is clear. *See, e.g., Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013).

Furthermore, as long as the ALJ is careful to explain his decision, he is entitled to reject portions of a medical opinion that conflict with other evidence in the record. *See Raymer v. Colvin*,

9

No. 14-CV-6009P, 2015 WL 5032669, at *5 (W.D.N.Y. Aug. 25, 2015) ("an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions"). Upon review of Plaintiff's newly submitted evidence, the Court finds it did not "add so much as to make the ALJ's decision contrary to the weight of the evidence." *Rutkowski v. Astrue*, 368 F. App'x. 226, 229 (2d Cir. 2010); *see also Bushey v. Colvin*, 552 F. App'x. 97, 98 (2d Cir. 2014) (new evidence submitted to Appeals Council "did not alter the weight of evidence so dramatically as to require the Appeals Council to take the case").

First, the Court notes that Dr. Gbadamosi's February 2017 assessment is unsigned. *See* Tr. 935. Second, the individual filling out the form was unable to opine as to any exertional limitations. Tr. 932-934. The opinions contained in the second form are also notably different those contained in the form filled out and signed by Dr. Gbadamosi in May 2014. Tr. 317-21. Third, in the most recent form, the scrivener noted clinical signs such as weight gain (Tr. 931), yet the 2014 form records that Plaintiff weighed 43 pounds less than she did in 2008. Tr. 323, 415. Fourth, the fill-in-the-box questions are checked with a check mark in the 2014 form but checked with an "x" in the 2017 form. While these internal and external inconsistencies raise questions as to the reliability of the February 2017 report, for purposes of this opinion the Court finds the report is properly attributed to Dr. Gbadamosi's office. Even so, for the reasons discussed below, the Court finds the February 2017 report would not materially change the ALJ's decision.

First, no exertional limitations are noted in the report. Second, the fill-in-the-box responses, without additional explanation, particularly as to Plaintiff's ability to perform any work activities at all, invade the province of the ALJ. It is well settled that the matter of a claimant's disability is a matter reserved for the Commissioner. *Snell v. Apfel*, 177 F.3d 128,133 (2d Cir. 1999) ("[S]ome kinds of findings—including the ultimate finding of whether a claimant is disabled and cannot

work—are reserved to the Commissioner. . . . [T]he Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability."); 20 C.F.R. § 404.1527(d) (opinions that a claimant is disabled or unable to work are opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case).

Next, although the ALJ did not have the opportunity to review Dr. Gbadamosi's February 2017 opinion, the ALJ did have the opportunity to review Dr. Gbadamosi's earlier May 2014 opinion, wherein he opined that Plaintiff had no limitations in sitting, standing, walking, lifting, carrying, or handling objects. Tr. 317-19. He noted he had referred Plaintiff to psychiatry for her depressive disorder (Tr. 315), and further specified that she had no limitation in understanding and memory, sustained concentration and persistence, social interaction, or adaptation (Tr. 319-20). He noted he had been treating her since at least November 2007 and characterized her condition as "indefinite stable." Tr. 315-16.

The ALJ recognized Dr. Gbadamosi as a treating source and evaluated the opinion under the treating physician rule, and in so doing, gave "some weight" to those portions of Dr. Gbadamosi's opinion consistent with other findings in the record. Tr. 17. As the ALJ noted, despite Plaintiff's history of depression and anxiety, the treatment notes generally recorded intact cognitive functioning, no significant interpersonal difficulties, and normal psychomotor functioning with good response to medications. Tr. 16, 323, 333, 350, 354, 357, 361, 365, 368, 371, 374, 377, 380, 383, 386, 388, 392, 396, 399, 403, 407, 411, 415, 565, 573, 577, 582, 586, 590, 596, 600, 603, 607, 610, 612, 635, 642, 646, 647, 665, 669, 673, 677, 699, 704, 708, 713, 718, 723, 727, 733, 738, 743, 748, 753, 758, 763, 768, 778, 780. An ALJ may discredit an opinion undermined by largely normal mental-status findings. *See Newell v. Colvin*, No. 15-CV-6262P,

11

2016 WL 4524809, at *14 (W.D.N.Y. Aug. 30, 2016), *reconsideration denied*, No. 15-CV-6262P, 2017 WL 1541239 (W.D.N.Y. Apr. 28, 2017) (The ALJ articulated sufficient rationale for rejecting the portion of a physician's opinion which was inconsistent with the physician's examination findings and the other information in the record.); *Downs v. Colvin*, No. 6:15-CV-06644(MAT), 2016 WL 5348755, at *4 (W.D.N.Y. Sept. 26, 2016). Furthermore, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).

In this case, the ALJ found that Plaintiff had moderate difficulties maintaining social functioning and limited Plaintiff to only occasional interaction with supervisors, coworkers, or the public. Tr. 14-15. She also found that, at most, Plaintiff had moderate difficulty maintaining concentration, persistence, or pace, and limited Plaintiff to simple, routine, repetitive tasks (not at a production rate pace) and using judgment and dealing with changes in the work setting limited to simple work-related decisions. *Id*. Such limitations are consistent with "low stress" work. *See Reyes v. Colvin*, 2016 WL 56267, *6 (W.D.N.Y. 2016) ("although the ALJ did not specifically include stress limitations in his RFC assessment, his reliance on the findings and observations of the consultative medical sources in terms of their consideration of plaintiff's stress-related functional limitations . . . represents the kind of thorough, individualized mental RFC evaluation contemplated by . . . the overall requirements of the [regulations]"). The ALJ found that the RFC assessment was supported by the objective medical evidence, Plaintiff's mental health treatment notes, her statements to her treating physician's, and the opinion evidence. Tr. 18. Thus, the ALJ reasonably found that Plaintiff was capable of low stress work as described above.

Based on the foregoing, the Court finds no further consideration of Dr. Gbadamosi's February 2017 opinion is required. Where on remand the ALJ's reconsideration of a treating physician's opinion would not have changed the ALJ's adverse determination, the error is harmless. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand when opinion of treating physician incorrectly discounted as incomplete and unsigned because agency reconsideration unnecessary where "application of the correct legal principles to the record could lead [only to the same] conclusion").

## II. The ALJ's RFC Finding Was Supported By Substantial Evidence.

Throughout the relevant time period, Plaintiff reported chronic back pain stemming from a motor vehicle accident, but the ALJ found that Plaintiff's condition caused no more than minimal work-related limitations and was therefore non-severe. Tr. 14. Plaintiff argues the ALJ failed to assess limitations placed on Plaintiff following a March 2015 emergency room visit for back pain at Erie County Medical Center ("ECMC") that placed limitations on lifting and carrying up to ten pounds, and restricted plaintiff from bending or twisting at the waist. *See* ECF No. 13-1 at 17. Based on this, Plaintiff argues her lumbar pain was a severe limitation. *Id*. Plaintiff argues the ALJ's analysis was insufficient, and remand is required for the ALJ to evaluate the limitations contained in the discharge instructions from the emergency room. *Id*. at 17-21. Plaintiff is incorrect. The limitations that are the linchpin of Plaintiff's argument were offered by an emergency room doctor in response to an acute injury; the doctor had no long-standing relationship with Plaintiff; and his opinion would not be entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527, 416.927; *see also Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (discussing that generally, the longer a treating source has treated the claimant and the more times the claimant has

been seen by a treating source, the more weight the Commissioner will give to the source's opinion). Nor would the ALJ be required to give "good reasons" for discounting the opinion. *Id*.

Plaintiff presented to the ECMC emergency room on March 1, 2015 complaining of "back pain or injury." Tr. 572. She reported that: "she broke up a fight between her son and daughter approximately 2 days ago and in the meantime had a fall and hit her back on the TV and TV stand." *Id*. She also reported "back issues" in the past, but she was unable to elaborate as to the specific nature of her "back issues." *Id*. Upon examination, emergency room physician Steven K Vonfrolio, M.D. ("Dr. Vonfrolio") noted decreased range of motion in the back secondary to pain and some areas of bruising over the right mid back laterally to the spine. Tr. 573. An MRI of Plaintiff's lumbar spine showed diffuse disc degeneration most prominent from L3 through S1; mild left neural foramen narrowing at T11-12; degenerative changes at T12-L1 with bilateral hypertrophy and mild dorsal lateral encroachment; bulging and hypertrophy at L2-3; severe spinal canal stenosis at L3-4 and mild right and moderate left subarticular narrowing and narrowing of the neural foramina; effacement of the thecal sac at L4-5; and mild narrowing of the neural foramen at L4-S1. Tr. 570-71.

An MRI study some eight years earlier demonstrated small to moderate left paracentral T11-L2 disc herniation; small central T12-L1 disc herniation; disk dehydration L3-4 with minimal disc bulges from L3-4 to L5-S1; and lower lumbar facet hypertrophy resulting in bilateral foraminal stenosis at L4-5. Tr. 424. The record associated with the visit indicates that the provider discussed with Plaintiff the importance of a home-based core strengthening and stretching program, and Plaintiff was directed to undertake home exercises. *Id*. There are no other imaging studies during this eight-year period, nor any record of permanent restrictions placed on Plaintiff.

In any event, after the emergency room visit, Plaintiff was discharged home on "Medrol Dosepak and some Norco." Tr. 574. Although Dr. Vonfrolio's discharge instructions restricted Plaintiff from lifting and carrying more than ten pounds and from bending or twisting at the waist, the discharge instructions also specified that Plaintiff was to follow-up with Dr. Clark within the week, indicating that the restrictions were intended to be temporary and she should follow up with her treating physician regarding her long-term care. *Id*. Even an opinion from a treating physician will not be conclusive of disability if the impairment does not meet the duration requirements of the Act. *Rice v. Barnhart*, 127 F.App'x 524, 526 n.1 (2d Cir. Mar. 31, 2005) (treating physician's finding that claimant was disabled for four-month period not indicative of disability) (citing 42 U.S.C. § 423(d)(1)(A)).

When Plaintiff did follow-up with her doctor, he did not endorse any limitations; instead, he merely prescribed pain medication and provided Plaintiff with a pamphlet on fall prevention for older adults. Tr. 723. When she returned to the emergency room the next month complaining of a possible overdose, her discharge instructions did not include any lifting/carrying or bending limitations, which is further evidence that the March 2015 restrictions were intended to be for a brief period. Tr. 576-80. Based on the foregoing, the Court finds that Plaintiff has not met her burden to show a disability in relation to her back. Plaintiff's argument that one emergency room visit a few years after her last date insured should have been factored into the RFC determination is without merit, and even if considered, would not have resulted in a change in the ALJ's ultimate RFC. "[F]ailure to consider or weigh an opinion may be harmless error where consideration of that opinion would not have changed the outcome." *Gemmell v. Comm'r of Soc. Sec.*, 2017 WL 3328237, at *5 (N.D.N.Y. Aug. 2, 2017). Agency reconsideration is unnecessary where

"application of the correct legal principles to the record could lead [only to the same] conclusion." *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010).

In this case, however, the ALJ's decision reflects that she did in fact consider Plaintiff's non-severe physical impairments, including back pain, at the later steps of the sequential evaluation process, and modified her RFC assessment as a result. The ALJ discussed Plaintiff's activities that were inconsistent with her allegations of disabling pain, including her ability to complete her activities of daily living, wash dishes, cook meals, care for her grandchildren, and run her own housecleaning business. Tr. 14, 16. She found that Plaintiff would have difficulty with heavy lifting and carrying due to a combination of her impairments. Tr. 17. Giving Plaintiff the "utmost benefit of the doubt regarding her physical complaints/ailments," the ALJ found it prudent to limit her to work at the light exertional level. Tr. 18. Based on the foregoing, the Court finds that the RFC was properly determined, and if there was any error, such error was harmless.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 18) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE